**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AMERISURE INSURANCE COMPANY and AMERISURE MUTUAL INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> vs. <br><br> PREMIER DESIGN + BUILD GROUP, LLC, and MG EAST, LLC, <br><br> Defendants. | No. 1:23-cv-16006 |

**AMERISURE INSURANCE COMPANY'S AND
AMERISURE MUTUAL INSURANCE COMPANY'S
AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COME Plaintiffs, Amerisure Insurance Company and Amerisure Mutual Insurance Company (collectively hereinafter "Amerisure"), by and through their attorneys of record, Emerson & Elder, P.C., and for their Amended Complaint for Declaratory Judgment against Defendants Premier Design + Build Group, LLC (hereinafter "Premier") and MG East, LLC (hereinafter "MGE") state as follows:

**I.     NATURE OF ACTION AND RELIEF SOUGHT**

1. This action seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

2. This is a civil action brought by Amerisure seeking a declaration that it owes no duty to defend or indemnify Premier under Commercial General Liability (hereinafter "CGL") insurance policies and Umbrella Liability (hereinafter "Umbrella") insurance policies (collectively referred to hereinafter as "Amerisure Policies") issued by Amerisure to Premier in connection with the underlying action captioned *MG East, LLC v. Premier Design + Build Group*, Case No.: 2023L008851, filed in the Circuit Court of Cook County, Illinois, Law Division (hereinafter "Underlying Action").

3. There is an actual, present, and *bona fide* controversy between the parties with respect to whether Amerisure is required to defend or indemnify Premier in the Underlying Action. *See* the Complaint filed in the Underlying Action attached hereto as **Exhibit A**. Amerisure denies it owes a duty to defend or a duty to indemnify Premier in the Underlying Action.

## II. PARTIES

4. MGE is the plaintiff in the Underlying Action.

5. Amerisure respectfully requests that this Court declare the rights and obligations of the parties under certain insurance contracts pursuant to 28 U.S.C. § 2201, et seq., finding and declaring that Amerisure owes no coverage obligations to Premier in the Underlying Action.

6. At the time of the commencement of this action, Plaintiff Amerisure Insurance Company is an insurance company organized and existing under the laws of the State of Michigan, with its principal place of business in Farmington Hills, Michigan.

7. At the time of the commencement of this action, Plaintiff Amerisure Mutual Insurance Company is an insurance company organized and existing under the laws of the State of Michigan.

8. At the time of the commencement of this action, Defendant Premier is an Illinois Limited Liability Company with its principal place of business in Chicago, Illinois. Premier's only member is Preferred Common Holding Company which is a Delaware corporation with its principal place of business in Illinois. On information and belief, Premier is transacting business in Illinois, including the geographical regions that encompass this United States District Court for the Northern District of Illinois, at all times relevant hereto.

9. At the time of the commencement of this action, Defendant MGE is a Florida Limited Liability Company with its principal place of business in Rosemont, Illinois. The members of MGE are natural persons, including: Kevin D. Carroll, who resides in, is domiciled

in, and is a citizen of Florida; Steven F. Poulos, who resides in, is domiciled in, and is a citizen of Illinois; Anothy Pricco, who resides in, is domiciled in, and is a citizen of Illinois; Steve Groetsema, who resides in, is domiciled in, and is a citizen of Illinois; Sean Zasche, who resides in, is domiciled in, and is a citizen of Illinois; and Nick Siegel, who resides in, is domiciled in, and is a citizen of Illinois. On information and belief, MGE is transacting business in Illinois, including the geographical regions that encompass this United States District Court for the Northern District of Illinois, at all times relevant hereto. MGE has been joined to this action because it is the plaintiff in the Underlying Action, and thus is an interested party to this action.

### III. JURISDICTION AND VENUE

10. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and because the amount in controversy, exclusive of interests and costs, exceeds the sum of $75,000.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), (c)(2), and (d).

12. Pursuant to 22 U.S.C. § 2201, this Court has the power to make binding declarations of the rights and obligations of the parties herein and to adjudicate the dispute between the parties herein.

### IV. BACKGROUND

#### A. The Property

13. On or about September 26, 2017, MGE entered into a contract with Premier (hereinafter "Contract") for the construction of a three building, 1,108,566 square-foot office/warehouse facility known as the Bridge Point Commerce Center (hereinafter "Property"). A true and correct copy of the Contract is attached hereto and incorporated herein as **Exhibit B**. *See* Exhibit "A" at paragraph 8.

14. On information and belief, Premier acquired an interest in the Contract when Premier Design + Build National, LLC assigned its rights and obligations under the Contract to Premier. On information and belief, this assignment defined Premier as an assignee and not a subcontractor. *See* Exhibit "A" at paragraph 10.

15. Pursuant to the terms of the Contract, Premier agreed to construct three buildings (Buildings A, B, and C) on the Bridge Point Commerce Center Campus. *See* Exhibit "A" at paragraph 13.

    **B.**    **The Underlying Action**

16. On September 1, 2023, MGE filed its Complaint against Premier. MGE seeks amounts for the alleged defective installation of the roof, flashing, and gutters on all three buildings at the Property by Premier. *See* Exhibit "A".

17. MGE alleges that Premier's responsibilities included providing all labor, materials, equipment, tools, construction equipment, and machinery necessary for proper execution and completion of the Contract. MGE further alleges that Premier bears responsibility for all cutting, fitting, or patching that may be required to complete the construction or to make its several parts fit together properly. *See* Exhibit "A", at paragraphs 14 and 16.

18. MGE alleges Premier assumed responsibility for its, and its subcontractors', compliance with the drawings and specifications and all laws, ordinances, rules, regulations, and requirements of all governmental and public authorities. *See* Exhibit "A", at paragraph 18.

19. MGE alleges Premier warranted the quality of its work by supplying a one-year, non-exclusive warranty of all materials and equipment incorporated into the construction running from the date of substantial completion. *See* Exhibit "A", at paragraph 19.

20. MGE alleges Premier's work on Buildings A and C was substantially completed on or about March 10, 2020, and work on Building B was substantially completed on or about August 17, 2020. *See* Exhibit "A", at paragraph 23.

21. MGE alleges Premier, through Tecta America South Florida, Inc. (hereinafter "Tecta"), installed the galvanized metal flashing by bending it at the roof edges and then attaching bent galvanized metal to the buildings at the Property. *See* Exhibit "A", at paragraph 28.

22. MGE alleges Premier and Tecta failed to undertake any corrective measures to reseal the metal that was allegedly damaged by bending the galvanized steel prior to installation of the flashing. MGE further alleges the defective nature of the metal used for the flashing made it nonconforming with the plans and specifications for the three buildings. *See* Exhibit "A", at paragraphs 31, 33 and 28.

23. MGE alleges that as a result of Premier's failure to conform with the requirements of the Contract and applicable industry standards, the roof and gutter systems began to exhibit signs of corrosion within months of the buildings being completed. *See* Exhibit "A", at paragraph 30.

24. MGE alleges it presented the issues regarding the defective installation of the flashing and gutters to Premier in November 2020 in the punch list for the buildings at the Property. *See* Exhibit "A", at paragraph 31.

25. MGE alleges that the defects, which included heavy corrosion and pitting, by late 2021 was affecting MGE's relationships with its commercial tenants. *See* Exhibit "A", at paragraph 32.

26. MGE alleges that it requested Premier correct the installation before additional defects were evident, but Premier allegedly denied those requests. MGE further alleges that correction of the defective installation is no longer possible, and a full replacement of the gutters

5

and other damaged portions of the building is necessary. *See* Exhibit "A", at paragraphs 33 and 34.

27. MGE alleges that it has suffered and continues to suffer substantial damages. *See* Exhibit "A", at paragraph 41.

28. In its Complaint against Premier, MGE alleges Count I for Breach of Contract for the alleged breach by Premier of the Contract, which includes the following alleged failures:

    a. Premier breached its obligations under Article 2 of the Contract by causing the galvanized steel it used for the flashing to be damaged and nonconforming during the installation process and by failing to apply an additional galvanized coating to the bends in the metal where damage was likely to occur;

    b. All of the work by Premier and Tecta on the flashing breached the Contract; and

    c. Premier and Tecta failed to properly pitch the gutters and roof to ensure that all water on the roof was safely evacuated from the building without causing damage.

*See* Exhibit "A", at paragraphs 38-40.

29. As a result of Premier's alleged breach of contract and defective installation, MGE alleges that all three buildings are defective in that the damage to the flashing, gutters, downspouts, and buildings overall is so significant that replacement of the flashing and entire gutter system is necessary. *See* Exhibit "A", at paragraph 34.

    **C.    The Amerisure Policies**

30. Amerisure issued CGL policies and Umbrella policies to Premier, with annual policy periods running from July 1, 2015 to July 1, 2023 (collectively hereinafter "the Amerisure Policies").

31. Amerisure Mutual Insurance Company issued the following CGL Policies to Premier:

- Policy No. CPP 20926450102, with a policy period of July 1, 2015 to July 1, 2016;

- Policy No. CPP 20926450202, with a policy period of July 1, 2016 to July 1, 2017;

- Policy No. CPP 20926450302, with a policy period of July 1, 2017 to July 1, 2018;

- Policy No. CPP 20926450402, with a policy period of July 1, 2018 to July 1, 2019;

- Policy No. CPP 20926450502, with a policy period of July 1, 2019 to July 1, 2020;

- Policy No. CPP 20926450602, with a policy period of July 1, 2020 to July 1, 2021; and

- Policy No. CPP 20926450702, with a policy period of July 1, 2021 to July 1, 2022.

Copies of these policies are attached hereto as **Group Exhibit "C"**.

32. Amerisure Insurance Company issued the following Umbrella Liability Policies to Premier:

- Policy No. CU 20926470101, with a policy period of July 1, 2015 to July 1, 2016;

- Policy No. CU 20926470201, with a policy period of July 1, 2016 to July 1, 2017;

- Policy No. CU 20926470301, with a policy period of July 1, 2017 to July 1, 2018;

- Policy No. CU 20926470401, with a policy period of July 1, 2018 to July 1, 2019;

- Policy No. CU 20926470501, with a policy period of July 1, 2019 to July 1, 2020;

7

- Policy No. CU 20926470601, with a policy period of July 1, 2020 to July 1, 2021;

- Policy No. CU 20926470701, with a policy period of July 1, 2021 to July 1, 2022; and

- Policy No. CU 20926470801, with a policy period of July 1, 2022 to July 1, 2023.

Copies of these policies are attached hereto as **Group Exhibit "D"**.

33. The CGL Coverage Part of the CGL Policies states in relevant part:

> **SECTION I - COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
>     **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or 'suit' that may result. But:
>
>                     \*      \*      \*
>
>     **b.** This insurance applies to "bodily injury" and "property damage" only if:

\*    \*    \*

> **(2)** The "bodily injury" or "property damage" occurs during the policy period; . . .

*See* Group Exhibit "C".

\*    \*    \*

34. The CGL portion of the Amerisure CGL Policies includes a Definitions section, which, in part, includes the following definitions:

> **8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    **a.**    It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.**    You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

*   *   *

**13.**   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*   *   *

**17.**   "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.**   "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    **a.**    An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    **b.**    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

*   *   *

21. "Your product"

    a. Means:

        (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            (a) You;

            (b) Others trading under your name; or

            (c) A person or organization whose business or assets you have acquired; or

        (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    b. Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product'; and

        (2) The providing of or failure to provide warnings or instructions.

    c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

    a. Means:

        (1) Work or operations performed by you or on your behalf; and
        (2) Materials, parts or equipment furnished in connection with such work or operations.

    b. Includes:

        (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work', and

10

      **(2)**    The providing of or failure to provide warnings or instructions.

*See* Group Exhibit "C".

35. The Amerisure Umbrella Liability Policies state in relevant part:

**SECTION I - COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1.**    **Insuring Agreement**

        **a.**    We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for such "bodily injury" or 'property damage' when the 'underlying insurance" does not provide coverage or the limits of "underlying insurance' have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply….

          \*    \*    \*

        **c.**    This insurance applies to "bodily injury" and "property damage" only if:

          \*    \*    \*

      **(2)**    The "bodily injury" or "property damage" occurs during the policy period…

          \*    \*    \*

*See* Group Exhibit "D".

36. The above-referenced Definitions in the CGL Policies and set forth in the paragraph above are included in the Umbrella Liability Policies, either verbatim or in substantially similar form. The Umbrella Liability Policies also include the following Definitions:

11

> **19.** "Retained Limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.
>
> **20.** "Self-insured retention" means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to "occurrences" or offenses not covered by the "underlying insurance". The "self-insured retention" does not apply to "occurrences" or offenses which would have been covered by 'underlying insurance but for the exhaustion of applicable limits.
>
> \* \* \*
>
> **23.** "Ultimate net loss" means the total sum, after reduction for recoveries or salvages deductible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.
>
> **24.** "Underlying insurance" means any policies of insurance listed in the Declarations under Schedule of "underlying insurance".
>
> **25.** "Underlying insurer" means any insurer who provides any policy of insurance listed in the Schedule of "underlying insurance".

*See* Group Exhibit "D".

37. The Amerisure Policies include the Damage To Impaired Property Or Property Not Physically Injured exclusion, which excludes coverage to:

> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> **(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

*See* Group Exhibits "C" and "D".

38. The Amerisure Policies include the Exclusion – Contractors – Professional

12

Liability endorsement, which states:

> The following exclusion is added to Paragraph **2. Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability** and Paragraph **2. Exclusions of Section I - Coverage B** - **Personal And Advertising Injury Liability:**
>
> **1.** This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:
>
> > **a.** Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and
> >
> > **b.** Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or failure to render any professional services by you or on your behalf with respect to the operations described above.
>
> **2.** Subject to Paragraph **3.** below, professional services include:
>
> > **a.** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and
> >
> > **b.** Supervisory or inspection activities performed as part of any related architectural or engineering activities.
>
> **3.** Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

*See* Group Exhibits "C" and "D".

    39.    The Amerisure Policies also include the Exclusion – Construction Management

Errors and Omissions endorsement, which states:

> The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability**….
>
> This insurance does not apply to . . . "property damage" . . . arising out of:
>
> **1.** The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or
>
> **2.** Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved that which is described in Paragraph **1. or 2**.
>
> This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your 'employees' or your subcontractors.

*See* Group Exhibits "C" and "D".

## COUNT I
## NO DUTY TO DEFEND OR INDEMNIFY
## UNDER COVERAGE "A" OF THE AMERISURE POLICIES

40. Amerisure incorporates the allegations set forth within Paragraphs 1 through 39 as if fully set forth herein.

41. The Amerisure CGL Policies provide that "[w]e will have the right and duty to defend the insured against any 'suit' seeking those damages ["'property damage' to which this insurance applies"]. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

14

The "property damage" must be "caused by an 'occurrence' . . . [and] occur during the policy period."

42. The Amerisure Umbrella Policies similarly provide that "[w]e will have the right and duty to defend the insured against any 'suit' seeking those damages ["the 'ultimate net loss' in excess of the 'retained limit' because of . . . 'property damage' to which this insurance applies"] for such . . . 'property damage' when the 'underlying insurance' does not provide coverage or the limits of 'underlying insurance' have been exhausted." . . . "However, we will have no duty to defend the insured against any 'suit' seeking . . . 'property damage' to which this insurance does not apply."

43. The Amerisure CGL Policies also provide that "[w]e will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." The "property damage" must be "caused by an 'occurrence' . . . [and] occur during the policy period."

44. The Amerisure Umbrella Policies similarly provide that "[w]e will pay on behalf of the insured the 'ultimate net loss' in excess of the 'retained limit' because of . . . 'property damage' to which this insurance applies." The "property damage" must be "caused by an 'occurrence' . . . [and] occur[] during the policy period."

45. Insureds and their assignees and subrogees carry the burden of bringing a claim within the ambit of insurance coverage.

46. The alleged defective construction and resulting damages set forth in MGE's Complaint do not qualify as "property damage" caused by an "occurrence," as is required under the Amerisure Policies.

47. The mere repair of the work itself does not constitute "property damage" caused by an "occurrence," as those terms are defined under a CGL policy.

15

48. Additionally, mere breach of contract claims (*e.g.,* failure to perform, failure to complete) do not qualify as an "occurrence" under a CGL policy.

49. As any elements and amounts that could be awarded in connection with the alleged repairs or replacement done (or to be done) to the three buildings at the Property are beyond the coverage of the Amerisure Policies, Amerisure possesses no duty to defend or indemnify Premier in regard to the claims and allegations set forth in the Underlying Action.

**WHEREFORE,** Amerisure Insurance Company and Amerisure Mutual Insurance Company respectfully request entry of a declaratory judgment finding and declaring that Amerisure has no duty to defend and no duty to indemnify Premier Design + Build Group, LLC in regards to the Underlying Action, together with costs and any other further relief this Court deems just and proper.

<u>**COUNT II**</u>
<u>**IN THE ALTERNATIVE, SEVERAL EXCLUSIONS**</u>
<u>**IN THE AMERISURE POLICIES BAR ANY**</u>
<u>**DUTY TO DEFEND OR INDEMNIFY PREMIER DESIGN**</u>

50. Amerisure incorporates the allegations set forth within Paragraphs 1 through 39 as if fully set forth herein.

51. In the alternative, if there were any "property damage" alleged in the Underlying Action, the Damage To Impaired Property Or Property Not Physically Injured exclusion, the Professional Liability exclusion, and the Construction Management Errors and Omissions exclusion apply to bar any coverage for any "property damage" arising out of the design, engineering, supervision, and construction by Premier.

52. To the extent that there is any "property damage" to "impaired property" alleged in the Underlying Action, which arose out of the defects in Premier's work, the Damage To Impaired

16

Property Or Property Not Physically Injured exclusion operates to bar any coverage for Premier Design.

53. The Complaint in the Underlying Action also alleges the alleged failure to properly engineer, and supervise the construction of the flashing, gutters, and downspouts at Buildings A, B, and C of the Property.

54. The Professional Liability exclusion in the Amerisure CGL Policies and the Professional Services exclusion in the Amerisure Umbrella Policies operate to bar any coverage to Premier for any alleged "property damage" arising from the failure to properly render professional services.

55. The Construction Management Errors and Omissions exclusion in the Amerisure CGL Policies excludes any coverage for any "property damage" allegedly arising out of supervision and engineering activities undertaken by Premier as construction manager for the allegedly defectively installed flashing, gutters, and downspouts at Buildings A, B, and C of the Property.

**WHEREFORE**, Amerisure Insurance Company and Amerisure Mutual Insurance Company respectfully request entry of a declaratory judgment finding and declaring that Amerisure has no duty to defend Premier Design + Build Group, LLC in the Underlying Action or any indemnity obligation in connection with any award that may be entered against Premier in the Underlying Action, together with costs and any other further relief this Court deems just and proper.

                                                                        Respectfully submitted,

                                                                        Plaintiffs, Amerisure Insurance Company and
                                                                        Amerisure Mutual Insurance Company

                                                                        By:   /s/ *Donald E. Elder*

                                          Emerson & Elder, P.C.

Donald E. Elder
Illinois State Bar No. 6255889
Brett L. Warning
Illinois State Bar No. 6199057
Kevin Wenzel
Illinois State Bar No. 6339819 Emerson & Elder, P.C.
53 West Jackson Blvd.
Suite 526
Chicago, Il 60604
Tel: (312) 520-2502
Fax: (312) 265-1603
Email: dee@emersonelder.com
Email: brett@emersonelder.com
Email: kevin@emersonelder.com