**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AMERISURE INSURANCE COMPANY and AMERISURE MUTUAL INSURANCE COMPANY, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 1:23-cv-16006 |
| | ) | |
| PREMIER DESIGN + BUILD GROUP, LLC, MG EAST, LLC, STARR INDEMNITY & LIABILITY INSURANCE COMPANY, LIBERTY MUTUAL FIRE INSURANCE COMPANY, and KINSALE INSURANCE COMPANY, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**AMERISURE INSURANCE COMPANY'S AND**
**AMERISURE MUTUAL INSURANCE COMPANY'S**
**SECOND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COME Plaintiffs, Amerisure Insurance Company and Amerisure Mutual Insurance Company (collectively hereinafter "Amerisure"), by and through their attorneys of record, Emerson & Elder, P.C., and for their Second Amended Complaint for Declaratory Judgment against Defendants Premier Design + Build Group, LLC (hereinafter "Premier"), MG East, LLC (hereinafter "MGE"), Starr Indemnity & Liability Insurance Company ("Starr"), Liberty Mutual Fire Insurance Company ("Liberty Mutual"), and Kinsale Insurance Company ("Kinsale") state as follows:

## I.    NATURE OF ACTION AND RELIEF SOUGHT

1.    This action seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

2.    This is a civil action brought by Amerisure seeking a declaration that Starr, Liberty Mutual, and Kinsale owe a primary, non-contributory duty to defend Premier under Commercial

General Liability (hereinafter "CGL") insurance policies issued by Starr and Liberty Mutual to Tecta America South Florida, Inc. (hereinafter "Tecta"), and Kinsale to DT Menace Inc. ("DT Menace") in connection with the underlying action captioned *MG East, LLC v. Premier Design + Build Group*, Case No.: 2023L008851, filed in the Circuit Court of Cook County, Illinois, Law Division (hereinafter "Underlying Action").

3.        There is an actual, present, and *bona fide* controversy between the parties with respect to whether Starr, Liberty Mutual, and Kinsale are required to defend or indemnify[1] Premier in the Underlying Action on a primary and non-contributory basis. *See* the Complaint filed in the Underlying Action attached hereto as **Exhibit "A"**.  Amerisure denies it owes a primary duty to defend Premier in the Underlying Action.

## II.        PARTIES

4.        MGE is the plaintiff in the Underlying Action and is included as a defendant in this action as an interested party.

5.        Amerisure respectfully requests that this Court declare the rights and obligations of the parties under certain insurance contracts pursuant to 28 U.S.C. § 2201, et seq., finding and declaring that Starr, Liberty Mutual, and Kinsale owe Premier a primary and non-contributory duty to defend and Amerisure does not owe a primary duty to defend Premier in the Underlying Action.

6.        At the time of the commencement of this action, Plaintiff Amerisure Insurance Company is an insurance company organized and existing under the laws of the State of Michigan, with its principal place of business in Farmington Hills, Michigan, and is transacting business in

---

[1] The duty to indemnify is not currently ripe as the Underlying Action is ongoing.  Amerisure will move to amend this Complaint if there is any liability incurred by Premier after the Underlying Action is resolved, to seek a declaration as to the insurer defendants' obligations to Premier.

Illinois, including the geographical regions that encompass this United States District Court for the Northern District of Illinois, at all times relevant hereto.

7. At the time of the commencement of this action, Plaintiff Amerisure Mutual Insurance Company is an insurance company organized and existing under the laws of the State of Michigan, with its principal place of business in Farmington Hills, Michigan, and is transacting business in Illinois, including the geographical regions that encompass this United States District Court for the Northern District of Illinois, at all times relevant hereto.

8. At the time of the commencement of this action, Defendant Premier is an Illinois Limited Liability Company with its principal place of business in Chicago, Illinois. The only member of Premier is Preferred Common Holding Company which is a Delaware corporation with its principal place of business in Illinois. On information and belief, Premier is transacting business in Illinois, including the geographical regions that encompass this United States District Court for the Northern District of Illinois, at all times relevant hereto.

9. At the time of the commencement of this action, Defendant MGE is a Florida Limited Liability Company with its principal place of business in Rosemont, Illinois. The members of MGE are natural persons, including: Kevin D. Carroll, who resides in, is domiciled in, and is a citizen of Florida; Steven F. Poulos, who resides in, is domiciled in, and is a citizen of Illinois; Anothy Pricco, who resides in, is domiciled in, and is a citizen of Illinois; Steve Groetsema, who resides in, is domiciled in, and is a citizen of Illinois; Sean Zasche, who resides in, is domiciled in, and is a citizen of Illinois; and Nick Siegel, who resides in, is domiciled in, and is a citizen of Illinois. On information and belief, MGE is transacting business in Illinois, including the geographical regions that encompass this United States District Court for the Northern District of Illinois, at all times relevant hereto. MGE has been joined to this action because it is the plaintiff in the Underlying Action, and thus is an interested party to this action.

10. At the time of the commencement of this action, Defendant Starr is an insurance company organized and existing under the laws of the State of Texas, with its principal place of business in Dallas, Texas, and is transacting business in Illinois, including the geographical regions that encompass this United States District Court for the Northern District of Illinois, at all times relevant hereto.

11. At the time of the commencement of this action, Defendant Liberty Mutual is an insurance company organized under the laws of the State of Massachusetts, with its principal place of business in Wausau, Wisconsin, and is transacting business in Illinois, including the geographical regions that encompass this United States District Court for the Northern District of Illinois, at all times relevant hereto.

12. At the time of the commencement of this action, Defendant Kinsale is is an insurance company organized and existing under the laws of the State of Arkansas, with its principal place of business in Little Rock, Arkansas, and is transacting business in Illinois, including the geographical regions that encompass this United States District Court for the Northern District of Illinois, at all times relevant hereto.

## III. <u>JURISDICTION AND VENUE</u>

13. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and because the amount in controversy, exclusive of interests and costs, exceeds the sum of $75,000.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1), (c)(2), and (d).

15. Pursuant to 22 U.S.C. § 2201, this Court has the power to make binding declarations of the rights and obligations of the parties herein and to adjudicate the dispute between the parties herein.

## IV. <u>BACKGROUND</u>

### A. The Project

16.     On or about September 26, 2017, MGE entered into a contract with Premier (hereinafter "Contract") for the construction of a three building, 1,108,566 square-foot office/warehouse facility known as the Bridge Point Commerce Center in Miami Gardens, Florida (hereinafter "Project"). A true and correct copy of the Contract is attached hereto and incorporated herein as **Exhibit "B"**. *See* Exhibit "A" at paragraph 8.

17.     On information and belief, Premier acquired an interest in the Contract when Premier Design + Build National, LLC assigned its rights and obligations under the Contract to Premier. On information and belief, this assignment defined Premier as an assignee and not a subcontractor. *See* Exhibit "A" at paragraph 10.

18.     Pursuant to the terms of the Contract, Premier agreed to construct three buildings (Buildings A, B, and C) on the Bridge Point Commerce Center Campus. *See* Exhibit "A" at paragraph 13.

### B. The Underlying Action

19.     On September 1, 2023, MGE filed its Complaint against Premier. MGE seeks amounts for the alleged defective installation of the roof, flashing, and gutters on all three buildings at the Property by Premier. *See* Exhibit "A".

20.     MGE alleges that Premier's responsibilities included providing all labor, materials, equipment, tools, construction equipment, and machinery necessary for proper execution and completion of the Contract. MGE further alleges that Premier bears responsibility for all cutting, fitting, or patching that may be required to complete the construction or to make its several parts fit together properly. *See* Exhibit "A", at paragraphs 14 and 16.

21.     MGE alleges Premier assumed responsibility for its, and its subcontractors', compliance with the drawings and specifications and all laws, ordinances, rules, regulations, and requirements of all governmental and public authorities. *See* Exhibit "A", at paragraph 18.

22.     MGE alleges Premier warranted the quality of its work by supplying a one-year, non-exclusive warranty of all materials and equipment incorporated into the construction running from the date of substantial completion. *See* Exhibit "A", at paragraph 19.

23.     MGE alleges Premier's work on Buildings A and C was substantially completed on or about March 10, 2020, and work on Building B was substantially completed on or about August 17, 2020. *See* Exhibit "A", at paragraph 23.

24.     MGE alleges Premier, through Tecta, installed the galvanized metal flashing by bending it at the roof edges and then attaching bent galvanized metal to the buildings at the Property.  *See* Exhibit "A", at paragraph 28.

25.     MGE alleges Premier and Tecta failed to undertake any corrective measures to reseal the metal that was allegedly damaged by bending the galvanized steel prior to installation of the flashing.  MGE further alleges the defective nature of the metal used for the flashing made it nonconforming with the plans and specifications for the three buildings. *See* Exhibit "A", at paragraphs 28, 31, 33.

26.     MGE alleges that as a result of Premier's failure to conform with the requirements of the Contract and applicable industry standards, the roof and gutter systems began to exhibit signs of corrosion within months of the buildings being completed. *See* Exhibit "A", at paragraph 30.

27.     MGE alleges it presented the issues regarding the defective installation of the flashing and gutters to Premier in November 2020 in the punch list for the buildings at the Property. *See* Exhibit "A", at paragraph 31.

28.     MGE alleges that the defects, which included heavy corrosion and pitting, by late 2021 was affecting MGE's relationships with its commercial tenants. *See* Exhibit "A", at paragraph 32.

29.     MGE alleges that it requested Premier correct the installation before additional defects were evident, but Premier allegedly denied those requests. MGE further alleges that correction of the defective installation is no longer possible, and a full replacement of the gutters and other damaged portions of the building is necessary. *See* Exhibit "A", at paragraphs 33 and 34.

30.     MGE alleges that it has suffered and continues to suffer substantial damages. *See* Exhibit "A", at paragraph 41.

31.     In its Complaint against Premier, MGE alleges Count I for Breach of Contract for the alleged breach by Premier of the Contract, which includes the following alleged failures:

      a.    Premier breached its obligations under Article 2 of the Contract by causing the galvanized steel it used for the flashing to be damaged and nonconforming during the installation process and by failing to apply an additional galvanized coating to the bends in the metal where damage was likely to occur;

      b.    All of the work by Premier and Tecta on the flashing breached the Contract; and

      c.    Premier and Tecta failed to properly pitch the gutters and roof to ensure that all water on the roof was safely evacuated from the building without causing damage.

*See* Exhibit "A", at paragraphs 38-40.

32.     As a result of Premier's alleged breach of contract and defective installation, MGE alleges that all three buildings are defective in that the damage to the flashing, gutters, downspouts,

and buildings overall is so significant that replacement of the flashing and entire gutter system is necessary. *See* Exhibit "A", at paragraph 34.

**C.    The Subcontractor Insurers' Policies**

**1.    Starr**

33.    Starr issued CGL policies to Tecta with annual policy periods running from March 31, 2017 to March 31, 2020 (collectively hereinafter "the Starr Policies").[2]

34.    Starr issued the following CGL policies to Tecta:

- Policy No. 1000025369171 with a policy period of March 31, 2017 to March 31, 2018;

- Policy No. 1000025369181 with a policy period of March 31, 2018 to March 31, 2019; and

- Policy No. 1000025369191 with a policy period of March 31, 2019 to March 31, 2020.

Copies of these policies are attached hereto as **Group Exhibit "C"**.

35.    The CGL Coverage Part of the Starr Policies state in relevant part:

**SECTION I - COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

a.    We will pay on behalf of the insured those sums in excess of the "Retained Limit" that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right but not the duty to defend any "suit" seeking those damages. We may at our discretion and expense, participate with you in the investigation of any "occurrence" and the defense and settlement of any claim or 'suit' that may result.  But:

---

[2] Starr issued two excess policies to Tecta covering policy periods of March 31, 2021 to March 31, 2023. Amerisure reserves the right to seek leave to amend the Complaint to include the Starr excess policies should the duty to indemnify become ripe.

> (i)  The amount we will pay for damages is limited as described in SECTION III LIMITS OF INSURANCE; and
>
> (ii) Our right to defend, if we so exercise it, ends when we have exhausted the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

*     *     *

*See, e.g.*, Group Exhibit "C" at p. 183.

36.    The Starr Policies include the Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization endorsement that states in relevant part:

**SCHEDULE**

| Name of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| **Where required by written contract.** | **Where required by written contract.** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

> **1.** Your acts or omissions; or
>
> **2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.\

*     *     *

*See, e.g.*, Group Exhibit "C" at p. 39.

37. The Starr Policies also include the Additional Insured – Owners, Lessees or Contractors – Completed Operations endorsement that states in relevant part:

**SCHEDULE**

| Name of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| **Where required by written contract.** | **Where required by written contract.** |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by "your work" at the location designated and described in the schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

\*    \*    \*

*See, e.g.*, Group Exhibit "C" at p. 78.

38. The Starr Policies include the Primary and Non-Contributory Condition endorsement, which states in pertinent part:

A. **SECTION IV – CONDITIONS,** condition **4. Other Insurance** is amended as follows:

1. The following is added to paragraph **4.a.** of the **Other Insurance** condition:

This insurance is primary insurance as respects our coverage to the additional insured, where the written contract or written agreement requires that this insurance be primary and non-contributory. In that event, we will not seek contribution from any other insurance policy available to the additional insured on which the additional insured is a Named Insured.

*See, e.g.*, Group Exhibit "C" at p. 173.

2. **Liberty Mutual**

39.     Liberty Mutual issued CGL policies to Tecta with annual policy periods running from March 31, 2020 to March 31, 2023 (collectively hereinafter "the Liberty Mutual Policies").

40.     Liberty Mutual issued the following CGL policies to Tecta:

- Policy No. EB2-C41-435487-430 with a policy period of March 31, 2020 to March 31, 2021;

- Policy No. EB2-641-435487-431 with a policy period of March 31, 2021 to March 31, 2022; and

- Policy No. EB2-641-435487-432 with a policy period of March 31, 2022 to March 31, 2023.

Copies of these policies are attached hereto as **Group Exhibit "D"**.

41.     The CGL Coverage Part of the Liberty Mutual Policies state in relevant part:

**A. Insuring Agreement**

1.     Paragraph **1.a.** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

a.     We will pay those sums in excess of the Self-Insured Amount that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  But:

(1) The amount we will pay for damages is limited as described in **Section III – Limits Of Insurance**;

(2) We will not have a duty to defend or investigate any claim or "suit" seeking damages to which this insurance may apply; and

(3) Rights and duties relating to the defense, settlement and investigation of claims or "suits" to which this insurance may apply are set forth in **Section VI – Defense, Settlement And Investigation Of Claims And Suits**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Supplementary Payments/Allocated Loss Adjustment Expense**.

*     *     *

**B. Supplementary Payments – Coverages A And B** is replaced by the following:

**Supplementary Payments/Allocated Loss Adjustment Expense**

1. For each claim or "suit", "allocated loss adjustment expense" paid by the insured will reduce the Self-Insured Amount applicable to that claim or "suit".

2. Where the insured controls the defense, we will reimburse the insured for "allocated loss adjustment expense" paid by the insured (other than amounts reimbursed by other insurance) after the applicable Self-Insured Amount has been exhausted by the payment of damages, "allocated loss adjustment expense" and/or other covered expense(s), if any. These reimbursed amounts for "allocated loss adjustment expense" will not reduce the limits of insurance.

   If any insurance under this Policy applies on an each claim, each accident, each person or organization, each disease, each employee or other stated basis rather than a basis described above, we will reimburse the insured for "allocated loss adjustment expense" after the insured exhausts the applicable Self-Insured Amount by the payment of damages, "allocated loss adjustment expense" and/or other covered expense(s), if any.

   The first Named Insured shown in the Declarations shall maintain adequate records and supporting data for any reimbursement of "allocated loss adjustment expense" due from us.

3. Where we control the defense, we are responsible for all "allocated loss adjustment expense" after the applicable Self-Insured Amount has been exhausted by the payment of damages, "allocated loss adjustment expense" and/or other covered expense(s), if any. These amounts for "allocated loss adjustment expense" will not reduce the limits of insurance.

   \*       \*       \*

6. Where the insured controls the defense of a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will reimburse the insured for "allocated loss adjustment expense" paid by the insured for that indemnitee after the Self-Insured Amount has been exhausted by the payment of damages, "allocated loss adjustment expense" and/or other covered expense(s), if any, by the insured for that "occurrence", claim or "suit" if conditions **a.** through **f.** below are met.

   \*       \*       \*

**C.** The following is added to **Section III – Limits Of Insurance**:

   The limits of insurance apply in excess of the Self-Insured Amount shown in the Declarations.

**D. Self-Insured Amount**

You are responsible up to the amount shown in the Declarations under Self-Insured Amount for:

**1.** Damages, "allocated loss adjustment expense", and/or other covered expense(s), if any, to which this Policy applies on an each "occurrence" basis.

**2.** Damages, "allocated loss adjustment expense", and/or other covered expense(s), if any, to which this Policy applies on an each claim, each accident, each person or organization, each disease, each employee, or other stated basis rather than on an each "occurrence" basis.

       \*      \*      \*

**4. Maintenance Of The Self-Insured Amount And Other Insurance**

       \*      \*      \*

    **d.** Any other insurance, whether primary, excess, contingent or on any other basis, available to you that is applicable to the Self-Insured Amount and is not in violation of Paragraph **c.** above, shall be deemed to satisfy your responsibility for the Self-Insured Amount to the extent such other insurance actually pays such amounts. The availability of such other insurance shall not reduce any of our rights under this Coverage Part.

       \*      \*      \*

    **F.** The following Conditions are added to **Section IV – Commercial General Liability Conditions:**

        **1. Additional Insureds**

        With respect to any additional insureds under this Policy or any endorsements attached:

        **a.** Regardless of any provisions of any endorsement or written agreement, including a promise to provide coverage to an additional insured on a primary and non-contributory basis, this coverage is excess over the Self-Insured Amount and the insured is responsible for all damages, "allocated loss adjustment expense" and/or other covered expense(s), if any, within the Self-Insured Amount.

        **b.** Where a written agreement requires the insured to provide liability insurance to an additional insured on a primary, excess, contingent, or any other basis, this insurance will apply solely on the basis required by such written agreement provided:

          **(1)** The coverage and minimum limits of insurance required by the written agreement, in no event exceed either the scope of coverage

13

or the limits of insurance provided by this Policy;

**(2)** The "bodily injury" or "property damage" occurs, or the offense giving rise to "personal and advertising injury" is committed, subsequent to the execution of the written agreement; and

**(3)** The written agreement is in effect at the time the "bodily injury" or "property damage" occurs, or at the time the offense giving rise to the "personal and advertising injury" is committed.

\*       \*       \*

**G.** The following definitions are added to **Section V – Definitions:**

**1.** "Allocated loss adjustment expense" means:

**a.** "Reasonable attorneys' fees" for claims or "suits".

\*       \*       \*

**H.** The following **Section VI – Defense, Settlement And Investigation Of Claims And Suits** is added:

**Section VI – Defense, Settlement And Investigation Of Claims And Suits**

Rights and duties relating to the defense, settlement and investigation of claims or "suits" to which this Coverage Part may apply are as follows:

**1.** The insured has the duty to defend any "suit".

The insured's duty to defend shall be terminated only by:

**a.** Our exercise of our right to assume control of the defense of any specific claim or "suit" as set forth in Paragraph **3.** below;

**b.** The settlement, final adjudication or other termination of such claim or "suit"; or

**c.** Assumption of the defense by another insurer.

*See, e.g.*, Exhibit "D" at pp. 50-56.

42.    The Liberty Mutual March 31, 2021 to March 31, 2022 Policy also states the following, in part, in the Declarations:

SELF-INSURED AMOUNT
Each Occurrence, Claim, Accident, Person, Organization, or

14

other basis stated in the policy, whichever applies

*See* Group Exhibit "D" at p. 139.

43. The Liberty Mutual Policies include the Additional Insured – Owners, Lessees or Contractors – Scheduled Person Or Organization endorsement, which states in relevant part:

**SCHEDULE**

| **Name Of Additional Insured Person(s) Or Organization(s):** Any person or organization for whom you have agreed in a written contract or agreement prior to loss. |
|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

    **1.** In the performance of your ongoing operations; or

    **2.** In connection with your premises owned by or rented to you

However:

    **1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

    **2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

*See, e.g.*, Group Exhibit "D" at p. 73.

44.    The Liberty Mutual Policies also include the Additional Insured – Owners, Lessees

or Contractors – Completed Operations endorsement which states in relevant part:

**SCHEDULE**

| Name of Additional Insured Person(s) Or Organization(s): | Location(s) Of Covered Operations |
|---|---|
| **Any person or organization for whom you have agreed in a written contract or agreement prior to loss.** | **All locations where required by written contract or agreement.** |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A. Section II – Who Is An Insured** is amended to include as an additional the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury" or "property damage" caused, in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

1.    The insurance afforded to such additional insured only applies to the extent permitted by law; and

2.    If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

*See, e.g.*, Group Exhibit "D" at p. 79.

45.     The Liberty Mutual Policies include the Primary and Noncontributory – Other Insurance Condition endorsement, which in relevant part states:

> The following is added to the **Other Insurance** Condition and supersedes any provision to the contrary:
>
> ### Primary And Noncontributory Insurance
>
> This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:
>
> **(1)** The additional insured is a Named Insured under such other insurance; and
>
> **(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

*See, e.g.*, Group Exhibit "D" at p. 65.

### 3.     Kinsale

46.     Upon information and belief, Kinsale issued a CGL policy to DT Menace with a policy period of March 8, 2019 to March 8, 2020 and a policy number 0100082283 0.  Amerisure does not possess a copy of this policy but will file a copy when it is obtained.

### D.     The Amerisure Policies

47.     Amerisure issued CGL policies and Umbrella policies to Premier, with annual policy periods running from July 1, 2015 to July 1, 2023 (collectively hereinafter "the Amerisure Policies").

48.     Amerisure Mutual Insurance Company issued the following CGL Policies to Premier:

- Policy No. CPP 20926450102, with a policy period of July 1, 2015 to July 1, 2016;

- Policy No. CPP 20926450202, with a policy period of July 1, 2016 to July 1, 2017;

- Policy No. CPP 20926450302, with a policy period of July 1, 2017 to July 1, 2018;

- Policy No. CPP 20926450402, with a policy period of July 1, 2018 to July 1, 2019;

- Policy No. CPP 20926450502, with a policy period of July 1, 2019 to July 1, 2020;

- Policy No. CPP 20926450602, with a policy period of July 1, 2020 to July 1, 2021; and

- Policy No. CPP 20926450702, with a policy period of July 1, 2021 to July 1, 2022.

Copies of these policies are attached hereto as **Group Exhibit "E"**.

49. Amerisure Insurance Company issued the following Umbrella Liability Policies to Premier:

- Policy No. CU 20926470101, with a policy period of July 1, 2015 to July 1, 2016;

- Policy No. CU 20926470201, with a policy period of July 1, 2016 to July 1, 2017;

- Policy No. CU 20926470301, with a policy period of July 1, 2017 to July 1, 2018;

- Policy No. CU 20926470401, with a policy period of July 1, 2018 to July 1, 2019;

- Policy No. CU 20926470501, with a policy period of July 1, 2019 to July 1, 2020;

- Policy No. CU 20926470601, with a policy period of July 1, 2020 to July 1, 2021;

- Policy No. CU 20926470701, with a policy period of July 1, 2021 to July 1, 2022; and

- Policy No. CU 20926470801, with a policy period of July 1, 2022 to July 1, 2023.

Copies of these policies are attached hereto as **Group Exhibit "F"**.

50.     The CGL Coverage Part of the CGL Policies states in relevant part:

**SECTION I - COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**2.      Insuring Agreement**

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or 'suit' that may result.  But:

\*        \*        \*

b.   This insurance applies to "bodily injury" and "property damage" only if:

\*        \*        \*

**(2)**     The "bodily injury" or "property damage" occurs during the policy period; . . .

*See, e.g.*, Group Exhibit "E" at p. 154.

\*        \*        \*

51.     The CGL portion of the Amerisure CGL Policies includes a Definitions section, which, in part, includes the following definitions:

**8.**     "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.**     It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.**     You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

\*　　\*　　\*

**13.**　"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*　　\*　　\*

**17.**　"Property damage" means:

**a.**　Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.**　Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.**　"Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.**　An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.**　Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

\*　　\*　　\*

**21.**　"Your product"

**a.**　Means:

**(1)**　Any goods or products, other than real property,

20

        manufactured, sold, handled, distributed or disposed of by:

        **(a)**    You;

        **(b)**    Others trading under your name; or

        **(c)**    A person or organization whose business or assets you have acquired; or

    **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

  **b.**    Includes:

    **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product'; and

    **(2)**    The providing of or failure to provide warnings or instructions.

  **c.**    Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.**    "Your work":

  **a.**    Means:

    **(1)**    Work or operations performed by you or on your behalf; and
    **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

  **b.**    Includes:

    **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work', and

    **(2)**    The providing of or failure to provide warnings or instructions.

*See, e.g.*, Group Exhibit "E" at pp. 166-69.

    52.    The Amerisure Umbrella Liability Policies state in relevant part:

**SECTION I - COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

    **1.**     **Insuring Agreement**

        **a.**   We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for such "bodily injury" or 'property damage' when the 'underlying insurance" does not provide coverage or the limits of "underlying insurance' have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply….

                    \*      \*      \*

        **c.**   This insurance applies to "bodily injury" and "property damage" only if:

                    \*      \*      \*

        **(2)**   The "bodily injury" or "property damage" occurs during the policy period…

                    \*      \*      \*

*See, e.g.*, Group Exhibit "F" at p. 19.

    53. The above-referenced Definitions in the CGL Policies and set forth in the paragraph above are included in the Umbrella Liability Policies, either verbatim or in substantially similar form. The Umbrella Liability Policies also include the following Definitions:

    **19.**   "Retained Limit" means the available limits of "underlying insurance" scheduled in the Declarations or the "self-insured retention", whichever applies.

20. "Self-insured retention" means the dollar amount listed in the Declarations that will be paid by the insured before this insurance becomes applicable only with respect to "occurrences" or offenses not covered by the "underlying insurance". The "self-insured retention" does not apply to "occurrences" or offenses which would have been covered by 'underlying insurance but for the exhaustion of applicable limits.

\* \* \*

23. "Ultimate net loss" means the total sum, after reduction for recoveries or salvages deductible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

24. "Underlying insurance" means any policies of insurance listed in the Declarations under Schedule of "underlying insurance".

25. "Underlying insurer" means any insurer who provides any policy of insurance listed in the Schedule of "underlying insurance".

*See, e.g.*, Group Exhibit "F" at pp. 34-35.

## COUNT I
## STARR, LIBERTY MUTUAL, AND KINSALE OWE PREMIER A PRIMARY AND NON-CONTRIBUTORY DUTY TO DEFEND IN THE UNDERLYING ACTION

54. Amerisure incorporates the allegations set forth within Paragraphs 1 through 53 as if fully set forth herein.

55. The subcontract that Tecta entered into with Premier requires that Tecta provide Premier with additional insured coverage. The Subcontract states in part: "The following documents, addendum and/or riders are expressly made a part of this Subcontract . . . and Subcontractor acknowledges that it has received and reviewed copies of, and agrees to comply with, all of the terms and conditions of the following described documents and agreements: a. Form Insurance Certificate (Exhibit "A"). . . ." *See* page 2 of the Subcontract attached hereto at **Exhibit "G"**. Exhibit "A" to the Subcontract states in part: "It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to

23

operations performed by the Named Insured in connection with this project: 1.) Premier Design + Build Group, LLC 2.) Premier Design + Build National, LLC . . . .  The coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis."  *See* Exhibit "G" at p. 7.

56.     The sub-subcontract entered into between Tecta and DT Menace requires that DT Menace provide Premier with additional insured coverage.  *See* the Sub-subcontract attached hereto at **Exhibit "H"**.  The Sub-subcontract states in part: "Tecta, General Contractor, Owner and any other parties whom Tecta is required to name as additional insureds shall be additional insureds on Subcontractor's [DT Menace] commercial general liability, pollution, automobile liability and excess umbrella liability insurance policies.  The forms of Additional Insured coverage shall be CG 20 10 (07/04) or CG 20 33 (07/04) and CG 20 37 (07/04).  Additional insured coverage shall apply to completed operations."  *Id.* at 8(i), p. 3.  Tecta is required to name Premier as an additional insured in its subcontract with Premier [see paragraph 38].  The sub-subcontract also states:  "[a]ll policies maintained by Subcontractor [DT Menace] will be primary and non-contributory in the event of any loss arising out of Subcontractor's performance . . . ." *Id.* at 8(n), p. 3.

57.     The Starr Policies include the Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization endorsement that states that an organization is an additional insured where it is required in a written contract that the named insured, here Tecta, enters into with respect to liability for "property damage" caused, in whole or in part, by Tecta's acts or omissions in the performance of Tecta's ongoing operations for Premier Design at the location in the written contract.  *See, e.g.*, Group Exhibit "C" at p. 39.

58.     The Starr Policies also include the Additional Insured – Owners, Lessees or Contractors – Completed Operations endorsement that states that an organization is an additional insured where it is required in a written contract that the named insured, Tecta, enters into with

respect to liability for "property damage" caused, in whole or in part, by "your [Tecta's] work" at the location in the written contract performed for Premier Design and included in the "products-completed operations hazard". *See, e.g.*, Group Exhibit "C" at p. 78.

59. The Starr Policies include the Primary and Non-Contributory Condition endorsement, which states that the Other Insurance Condition is amended to state that the Starr coverage is primary insurance as to coverage for the additional insured where a written contract that Tecta entered into requires that the additional insured coverage is to be primary and non-contributory. Where the contract requires primary and non-contributory coverage, Starr will not seek contribution from any other insurance policy available to the additional insured, here Premier Design, on which the additional insured is a Named Insured, where here is the Amerisure policies. *See, e.g.*, Group Exhibit "C" at p. 173.

60. The Liberty Mutual Policies state the following:

1. For each claim or "suit", "allocated loss adjustment expense" paid by the insured will reduce the Self-Insured Amount applicable to that claim or "suit".

2. Where the insured controls the defense, we will reimburse the insured for "allocated loss adjustment expense" paid by the insured (other than amounts reimbursed by other insurance) after the applicable Self-Insured Amount has been exhausted by the payment of damages, "allocated loss adjustment expense" and/or other covered expense(s), if any. These reimbursed amounts for "allocated loss adjustment expense" will not reduce the limits of insurance.

   If any insurance under this Policy applies on an each claim, each accident, each person or organization, each disease, each employee or other stated basis rather than a basis described above, we will reimburse the insured for "allocated loss adjustment expense" after the insured exhausts the applicable Self-Insured Amount by the payment of damages, "allocated loss adjustment expense" and/or other covered expense(s), if any.

   The first Named Insured shown in the Declarations shall maintain adequate records and supporting data for any reimbursement of "allocated loss adjustment expense" due from us.

3. Where we control the defense, we are responsible for all "allocated loss adjustment expense" after the applicable Self-Insured Amount has been

exhausted by the payment of damages, "allocated loss adjustment expense" and/or other covered expense(s), if any. These amounts for "allocated loss adjustment expense" will not reduce the limits of insurance.

The Liberty Mutual Policies also state:

> **b.** Where a written agreement requires the insured to provide liability insurance to an additional insured on a primary, excess, contingent, or any other basis, this insurance will apply solely on the basis required by such written agreement provided:
>
> > **(1)** The coverage and minimum limits of insurance required by the written agreement, in no event exceed either the scope of coverage or the limits of insurance provided by this Policy;
> >
> > **(2)** The "bodily injury" or "property damage" occurs, or the offense giving rise to "personal and advertising injury" is committed, subsequent to the execution of the written agreement; and
> >
> > **(3)** The written agreement is in effect at the time the "bodily injury" or "property damage" occurs, or at the time the offense giving rise to the "personal and advertising injury" is committed.
>
> > *      *      *

> "Allocated loss adjustment expense" means:
>
> > **a.** "Reasonable attorneys' fees" for claims or "suits".

*See, e.g.*, Exhibit "D" at pp. 50-56.

61. On information and belief, the Kinsale policy contains similar additional insured provisions as those in the Starr policies.

62. The Amerisure CGL Policies include the Other Insurance Condition which states in part:

> **(1)** This insurance is excess over:
>
> > *      *      *
>
> > **(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

26

*See, e.g.*, Group Exhibit "E" at p. 165. The Umbrella Liability Policies include a similar provision. *See, e.g.*, Group Exhibit "F" at p. 31.

63. By operation of the Subcontract, the Sub-subcontract, the Subcontractor Insurers' policies, and the Other Insurance Condition of the Amerisure Policies, the Subcontractor Insurers owe Premier Design a primary and non-contributory defense in the Underlying Action.

**WHEREFORE**, Amerisure Insurance Company and Amerisure Mutual Insurance Company respectfully request entry of a declaratory judgment finding and declaring that Starr, Liberty Mutual, and Kinsale owe Premier a primary and non-contributory duty to defend in the Underlying Action as an additional insured under its policy issued to Tecta, together with costs and any other further relief this Court deems just and proper.

### COUNT II
### STARR. LIBERTY MUTUAL AND KINSALE OWE AMERISURE REIMBURSEMENT OF AMOUNTS AMERISURE HAS INCURRED IN THE DEFENSE OF PREMIER IN THE UNDERLYING ACTION IN THE AMERISURE POLICIES BAR ANY DUTY TO DEFEND OR INDEMNIFY PREMIER DESIGN

64. Amerisure incorporates the allegations set forth within Paragraphs 1 through 53 as if fully set forth herein.

65. The Subcontract that Tecta entered into with Premier requires that Tecta provide Premier with additional insured coverage. The Subcontract states in part: "The following documents, addendum and/or riders are expressly made a part of this Subcontract . . . and Subcontractor acknowledges that it has received and reviewed copies of, and agrees to comply with, all of the terms and conditions of the following described documents and agreements: a. Form Insurance Certificate (Exhibit "A"). . . ." *See* page 2 of the Subcontract attached hereto at Exhibit "F". Exhibit "A" to the Subcontract states in part: "It is agreed that the following are added as Additional Insured on the General Liability and Auto Liability policies with respects to

operations performed by the Named Insured in connection with this project: 1.) Premier Design + Build Group, LLC 2.) Premier Design + Build National, LLC . . . . The coverage afforded to the Additional Insureds is on a Primary and Non-Contributory basis." *See* Exhibit "G" at p. 7.

66.    The sub-subcontract entered into between Tecta and DT Menace requires that DT Menace provide Premier with additional insured coverage. *See* the Sub-subcontract attached hereto at Exhibit "H". The Sub-subcontract states in part: "Tecta, General Contractor, Owner and any other parties whom Tecta is required to name as additional insureds shall be additional insureds on Subcontractor's [DT Menace] commercial general liability, pollution, automobile liability and excess umbrella liability insurance policies. The forms of Additional Insured coverage shall be CG 20 10 (07/04) or CG 20 33 (07/04) and CG 20 37 (07/04). Additional insured coverage shall apply to completed operations." *Id.* at 8(i), p. 3. Tecta is required to name Premier as an additional insured in its subcontract with Premier [see paragraph 38]. The sub-subcontract also states:  "[a]ll policies maintained by Subcontractor [DT Menace] will be primary and non-contributory in the event of any loss arising out of Subcontractor's performance . . . ." *Id.* at 8(n), p. 3.

67.    The Starr Policies include the Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization endorsement that states that an organization is an additional insured where it is required in a written contract that the named insured, here Tecta, enters into with respect to liability for "property damage" caused, in whole or in part, by Tecta's acts or omissions in the performance of Tecta's ongoing operations for Premier Design at the location in the written contract. *See, e.g.*, Group Exhibit "C" at p. 39.

68.    The Starr Policies also include the Additional Insured – Owners, Lessees or Contractors – Completed Operations endorsement that states that an organization is an additional insured where it is required in a written contract that the named insured, Tecta, enters into with

respect to liability for "property damage" caused, in whole or in part, by "your [Tecta's] work" at the location in the written contract performed for Premier Design and included in the "products-completed operations hazard".  *See, e.g.*, Group Exhibit "C" at p. 78.

69.     The Starr Policies include the Primary and Non-Contributory Condition endorsement, which states that the Other Insurance Condition is amended to state that the Starr coverage is primary insurance as to coverage for the additional insured where a written contract that Tecta entered into requires that the additional insured coverage is to be primary and non-contributory.  Where the contract requires primary and non-contributory coverage, Starr will not seek contribution from any other insurance policy available to the additional insured, here Premier Design, on which the additional insured is a Named Insured, where here is the Amerisure policies. *See, e.g.*, Group Exhibit "C" at p. 173.

70.     The Liberty Mutual Policies state the following:

3.  For each claim or "suit", "allocated loss adjustment expense" paid by the insured will reduce the Self-Insured Amount applicable to that claim or "suit".

4.  Where the insured controls the defense, we will reimburse the insured for "allocated loss adjustment expense" paid by the insured (other than amounts reimbursed by other insurance) after the applicable Self-Insured Amount has been exhausted by the payment of damages, "allocated loss adjustment expense" and/or other covered expense(s), if any. These reimbursed amounts for "allocated loss adjustment expense" will not reduce the limits of insurance.

If any insurance under this Policy applies on an each claim, each accident, each person or organization, each disease, each employee or other stated basis rather than a basis described above, we will reimburse the insured for "allocated loss adjustment expense" after the insured exhausts the applicable Self-Insured Amount by the payment of damages, "allocated loss adjustment expense" and/or other covered expense(s), if any.

The first Named Insured shown in the Declarations shall maintain adequate records and supporting data for any reimbursement of "allocated loss adjustment expense" due from us.

3. Where we control the defense, we are responsible for all "allocated loss adjustment expense" after the applicable Self-Insured Amount has been

exhausted by the payment of damages, "allocated loss adjustment expense" and/or other covered expense(s), if any. These amounts for "allocated loss adjustment expense" will not reduce the limits of insurance.

The Liberty Mutual Policies also state:

    **b.**    Where a written agreement requires the insured to provide liability insurance to an additional insured on a primary, excess, contingent, or any other basis, this insurance will apply solely on the basis required by such written agreement provided:

    **(4)** The coverage and minimum limits of insurance required by the written agreement, in no event exceed either the scope of coverage or the limits of insurance provided by this Policy;

    **(5)** The "bodily injury" or "property damage" occurs, or the offense giving rise to "personal and advertising injury" is committed, subsequent to the execution of the written agreement; and

    **(6)** The written agreement is in effect at the time the "bodily injury" or "property damage" occurs, or at the time the offense giving rise to the "personal and advertising injury" is committed.

*     *     *

"Allocated loss adjustment expense" means:

    **b.**  "Reasonable attorneys' fees" for claims or "suits".

*See, e.g.*, Exhibit "D" at pp. 50-56.

71.    On information and belief, the Kinsale policy contains similar additional insured provisions as those in the Starr policies.

72.    The Amerisure CGL Policies include the Other Insurance Condition which states in part:

    **(1)**    This insurance is excess over:

*     *     *

    **(b)**    Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

30

*See, e.g.*, Group Exhibit "E" at p. 165. The Umbrella Liability Policies include a similar provision. *See, e.g.*, Group Exhibit "F" at p. 31.

73.     By operation of the Subcontract, the Sub-subcontract, the Subcontractor Insurers' Policies, and the Other Insurance Condition of the Amerisure Policies, Starr, Liberty Mutual, and Kinsale owe Premier a primary and non-contributory defense in the Underlying Action.

74.     Amerisure has provided a defense to Premier in the Underlying Action that should have been provided by Starr, Liberty Mutual, and Kinsale.

75.     Amerisure is entitled, as subrogee of Premier, to reimbursement of the amounts it has incurred in the defense of Premier in the Underlying Action from Starr, Liberty Mutual, and Kinsale which owe a primary duty to defend Premier in the Underlying Action.

**WHEREFORE**, Amerisure Insurance Company and Amerisure Mutual Insurance Company respectfully request entry of a declaratory judgment finding and declaring that: (1) Starr, Liberty Mutual, and Kinsale owe Premier a primary and non-contributory duty to defend Premier in the Underlying Action as an additional insured under their policies issued to Tecta and DT Menace; (2) Starr breached its primary and non-contributory duty to defend Premier in the Underlying Action; and (3) that Amerisure, as subrogee and excess insurer of Premier, is entitled to all attorneys' fees incurred in the defense of Premier in the Underlying Action as a result of Starr's, Liberty Mutual's, and Kinsale's breach of each of their duty to defend Premier; together with costs and any other further relief this Court deems just and proper.

Respectfully submitted,

Plaintiffs, Amerisure Insurance Company and Amerisure Mutual Insurance Company

By:   /s/ *Donald E. Elder*
            Emerson & Elder, P.C.

Donald E. Elder
Illinois State Bar No. 6255889
Brett L. Warning
Illinois State Bar No. 6199057
Kevin Wenzel
Illinois State Bar No. 6339819 Emerson & Elder, P.C.
53 West Jackson Blvd.
Suite 526
Chicago, Il 60604
Tel: (312) 520-2502
Fax: (312) 265-1603
Email: dee@emersonelder.com
Email: brett@emersonelder.com
Email: kevin@emersonelder.com